IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| OTHA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | 4:03CV3253 |
| | ) | |
| v. | ) | |
| | ) | |
| HAROLD CLARKE and PATRICK | ) | MEMORANDUM OPINION |
| COLERICK, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court pursuant to the defendants' motion for summary judgment (Filing No. 42). Having reviewed the motion, the parties' briefs and evidentiary submissions, and the applicable law, defendants' motion will be granted.

**BACKGROUND**

The plaintiff, Otha Smith ("Smith"), is an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS"). He is currently housed at the Tecumseh State Correctional Institution. Defendant Harold Clarke ("Clarke") is employed as the Director of the NDCS. Defendant Patrick Colerick ("Colerick") is a licensed optometrist who provides optometry services to inmates at the NDCS.

On or about March 6, 1999, Smith was working in the kitchen at the Lincoln Correctional Center, when the chemical "Limeaway" splashed into his eye. Smith felt discomfort and requested to see a doctor. According to the defendants, Smith

was scheduled for an eye examination on June 24, 1999, but failed to appear.[1]  In November 1999, Colerick examined Smith's eye and informed him that a cataract was causing his loss of eyesight.  Colerick found that Smith's pupils reacted normally, which he claims indicated no evidence of a tumor.  Smith was given prescription lenses and told to return for another examination in a year.  On April 4, 2000, Smith complained of redness in his eyes and was examined by Colerick, who believed that the redness was a result of Smith's age and lack of sun protection.  Colerick once again found Smith's pupils and optic nerves to be normal.  On May 21, 2001, Smith had another annual exam, during which he reported difficulty seeing out of his left eye for the past eight or nine months.  During this examination, Colerick claims that, for the first time, Smith's pupils did not react normally.  Thus, Colerick referred Smith to Dr. Larry Wood, an opthamologist.  Dr. Wood examined Smith on May 22, 2001, and then referred Smith for an MRI, which revealed that a tumor was growing on Smith's pituitary gland and pinching his optic nerve.  Smith was referred to a neurosurgeon, Dr. George Greene, who performed surgery on October 10, 2001.  On June 30, 2003, Smith filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights under the Eighth Amendment.  Smith also

---

[1] Smith claims that he was unable to appear for his June 24, 1999, eye examination because he was in lockup and no one came to get him.

asserted state law negligence claims. The defendants have now moved the Court for summary judgment pursuant to Fed. R. Civ. P. 56.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A fact is material only when its resolution affects the outcome of the case. *Anderson,* 477 U.S. at 248. A material issue is genuine if it has any real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). On a motion for summary judgment, the Court must view all evidence and inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 250. However, the

nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  *Celotex,* 477 U.S. at 324.

**EIGHTH AMENDMENT**

Smith's first cause of action alleges that the defendants violated his Eighth Amendment rights when they failed to properly diagnose and treat his eye tumor.  The Eighth Amendment to the United States Constitution protects against cruel and unusual punishment.  The Amendment proscribes, *inter alia*, deliberate indifference to a prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  As the Supreme Court stated in *Estelle*, "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  *Id.* at 104-05.  However, "[i]t is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  *Id.* at 106.

At the outset, the Court notes that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a

prisoner." *Id*. See also *Wilbron v. Hutto*, 509 F.2d 621, 622 (8th Cir. 1975) ("Allegations of mere negligence in the treatment of a prisoner's condition or claims based upon differences of opinion over matters of medical judgment fail to state a federal constitutional question absent exceptional circumstances.") Rather, what Smith must do is prove that the defendants were deliberately indifferent to his serious medical needs. To do so, he must satisfy both subjective and objective components. As the Eighth Circuit has stated:

> To prevail on an Eighth Amendment claim, an inmate must prove both an objective element, which asks whether the deprivation was sufficiently serious, and a subjective element, which asks whether the defendant officials acted with a sufficiently culpable state of mind. In cases challenging prison conditions, the state of mind giving rise to liability is deliberate indifference.

*Choate v. Lockhart*, 7 F.3d 1370, 1373-74 (8th Cir. 1993).

First, to prove the objective element, Smith must prove that the deprivation was sufficiently serious. "A deprivation is 'sufficiently serious' if it denies a prisoner the 'minimum civilized measures of life's necessity.'" *Rahman X v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002), citing *Wilson v. Seiter*, 501 U.S. 294, 298, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991). The

-5-

defendants have conceded that Smith suffered a serious medical condition as a result of his pituitary tumor.

Second, to prove the subjective element, Smith must show that the defendants acted with a sufficiently culpable state of mind. According to the Supreme Court, "[A]llegations of 'inadvertent failure to provide adequate medical care,' or of a 'negligent . . . diagnosis,' simply fail to establish the requisite culpable state of mind." *Wilson*, 501 U.S. at 297, citing *Estelle*, 429 U.S. at 105-06. The Supreme Court has further stated that a prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The defendants claim that Smith has produced no evidence that Clarke was deliberately indifferent to his medical needs. According to the defendants, Clarke was only named as a party to this action because of his duties as Director of the NDCS, and there is no evidence that he was directly involved in Smith's medical care. In his affidavit, Clarke claims that he was unaware of Smith's requests for medical care until he was served with a copy of the complaint in this suit. Clarke also

claims that he had no personal involvement in the treatment of Smith.  Thus, the defendants assert that Clarke is entitled to summary judgment.

Smith, on the other hand, claims that Clarke was on notice that the medical treatment of the prisoners in his institution was inadequate, and he did nothing to correct the problem.  According to Smith, Clarke had a duty as Director of the NDCS to see that Smith was provided with proper medical treatment.  The Court finds Smith's arguments unpersuasive.  Smith has presented no evidence that Clarke knew of and disregarded an excessive risk to Smith's health or safety.  He has also produced no evidence to support his assertion that Clarke was aware that the medical treatment in the prison was inadequate, or that Clarke had any personal involvement in Smith's medical care.  As the Eighth Circuit has stated, "[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability.  Moreover, because [the defendants] lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [the plaintiff] to a doctor to treat his shoulder injury." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995).  Here, Smith claims that Clarke should be liable because he had a general responsibility to oversee the medical treatment of the prisoners in his institution.  Under

-7-

*Camberos*, this general responsibility is insufficient to establish liability for deliberate indifference under the Eighth Amendment.  Moreover, Clarke has no medical expertise, so he cannot be held liable for the medical staff's failure to properly treat Smith's eye problem.  Thus, the Court finds that there are no genuine issues of material fact on this issue, and Clarke is entitled to summary judgment on Smith's Eighth Amendment claim.

The defendants also claim that Clarke is entitled to summary judgment on the basis of qualified immunity.  Because the Court has already determined that Clarke is entitled to summary judgment on Smith's Eighth Amendment claim, the Court need not decide whether Clarke is entitled to qualified immunity.

Next, the defendants claim that Colerick's conduct also does not rise to the level of deliberate indifference under the Eighth Amendment.  The defendants argue that Smith has produced no evidence that Colerick drew an inference that Smith's symptoms signified the presence of a pituitary tumor.  In his affidavit, Colerick states that, until the results of the MRI were obtained, he had no knowledge or reason to know that Smith was suffering from a pituitary tumor.  Colerick claims that, based on Smith's age and prior life experiences, the symptoms he displayed were not unusual.  In addition, Colerick argues that once he actually made the inference that Smith's symptoms could be the result of a tumor, he immediately referred Smith to a treating opthamologist.

Colerick has also presented an affidavit from Dr. George Greene, the neurosurgeon who operated on Smith's tumor.  Dr. Greene states that, based on his experience and training, Smith received appropriate diagnostic care and treatment.  Dr. Greene also claims that Smith's condition was difficult to diagnose and would not typically be discovered through a preventative eye examination by an optometrist.

Smith, however, claims that he had complained of pain, loss of vision, headaches, and sensitivity to light since March, 1999, and these symptoms were all signs of a serious eye problem that went unrecognized by Colerick.  Even if the Court assumes that Colerick should have recognized Smith's symptoms as a more serious problem, Colerick's actions still do not rise to the level of an Eighth Amendment violation.  As the Eighth Circuit has stated:

> There is no doubt that the plaintiff had a serious medical need. . . . There is also no doubt that the medical care given him left something to be desired.  There was some delay in treating the [injury] properly, and this delay has apparently made surgery impractical.  But even if the treatment was inadequate, and even if the inadequacy would have amounted to negligence in a state-law tort case claiming medical malpractice, more must be shown to establish a constitutional violation.  There must be actual knowledge of the risk of harm,

> followed by deliberate inaction amounting to callousness.

*Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Moreover, the defendants cite *Johnson v. Quinones*, 145 F.3d 164 (4th Cir. 1998), a case that the Court finds persuasive due to its remarkably similar facts. Johnson, a Virginia inmate, complained of such symptoms as headaches, bags under his eyes, night sweats, and decreased and blurred vision. The facility's optometrist examined Johnson on four different occasions. During the first two examinations, Johnson complained of blurred vision. The optometrist measured Johnson's eyesight at 20/20 in each eye, and prescribed reading glasses. During the third examination, Johnson complained of bags under his eyes, headaches behind his right eye, and blurred vision. The optometrist measured his eyesight at 20/25, and prescribed new reading glasses. On his final examination, Johnson again complained about bags under his eyes and deteriorating vision. The optometrist measured his eyesight at 20/200. However, because the objective tests he performed on Johnson's eyes were not consistent with that measurement, the optometrist diagnosed Johnson as a "malingerer" and did not prescribe new glasses. Shortly after Johnson was released from prison, he lost sight in both eyes, and an opthamologist diagnosed him with a pituitary tumor. Johnson subsequently filed suit under § 1983, alleging that his Eighth Amendment rights had been violated. The physicians moved for

summary judgment. Johnson presented expert testimony that his symptoms were signs of a pituitary tumor, and that his physicians were trained to recognize the symptoms of a pituitary tumor. Nonetheless, the Fourth Circuit upheld the granting of summary judgment in favor of the physicians, stating:

> Entering summary judgment against Johnson, the district court correctly recognized that even if the doctors knew the symptoms of pituitary tumors and listened to Johnson's complaints of his symptoms, Johnson has failed to meet his burden of producing evidence creating a genuine issue of material fact concerning the doctors' deliberate indifference to serious medical needs. In other words, any negligence or malpractice on the part of the doctors in missing the diagnosis does not, by itself, support an inference of deliberate indifference by the doctors to Johnson's medical needs. To avoid summary judgment, Johnson needed to produce evidence that the doctors actually drew the inference between the symptoms and the tumor.

*Johnson*, 145 F.3d at 166.

Similarly, in this case, Smith has produced no evidence that Colerick drew the inference between Smith's symptoms and the pituitary tumor prior to the May 2001 examination, after which Colerick immediately referred Smith to Dr. Wood for further examination. As a result, Colerick's failure to properly diagnose Smith's condition at an earlier date could, at best, be

classified as negligence. As the Supreme Court held in *Wilson*, and the Fourth Circuit affirmed in *Johnson*, a negligent diagnosis does not establish the requisite culpable state of mind required for a finding of deliberate indifference. Thus, the Court finds that there is no dispute of material fact, and summary judgment will be granted for defendant Colerick on Smith's Eighth Amendment claim.

## NEGLIGENCE CLAIMS

In his second and third causes of action, Smith alleges negligence against the defendants. The defendants argue that summary judgment is appropriate on Smith's negligence claims because he has failed to comply with the requirements of the Nebraska State Tort Claims Act ("the Act"), which states that "no suit shall be maintained against the state, any state agency, or any employee of the state on any tort claim except to the extent, and only to the extent, provided by the State Tort Claims Act." Neb. Rev. Stat. § 81-8,209. Clarke, who is the Director of the NDCS, is clearly an employee of the State. The more difficult question is whether the Act applies to Colerick. Smith argues that Colerick is not an "employee" of the State because he merely contracted with the state to provide optometry services to inmates. However, the Court believes that the legislature intended that persons like Colerick should be considered employees of the State, as evidenced by Neb. Rev. Stat.

-12-

§ 81-8,239.08, which provides, "Any person who, at the request of the director of a state agency, provides medical or dental services to a person in the custody of the state may be represented by the Attorney General in the same manner as a state officer or employee under sections 81-8,239.05 and 81-8,239.06 in any civil action under the federal Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, which arose as a result of providing such services." Thus, the Court believes that Colerick is an employee of the state for purposes of this action.

Moreover, the requirements of the Act apply even though the defendants have been sued in their individual capacities, so long as they were acting within the scope of their employment. See *Cole v. Wilson*, 10 Neb. App. 156, 160, 627 N.W.2d 140, 144 (2001) ("The requirements of the Political Subdivisions Tort Claims Act apply where an individual is sued in his or her individual capacity, but is performing within the scope of employment.") The Nebraska Supreme Court has previously held that the provisions of the Political Subdivisions Tort Claims Act should be construed in harmony with similar provisions in the State Tort Claims Act. See *Cole v. Isherwood*, 264 Neb. 985, 989, 653 N.W.2d 821, 825 (2002), citing *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994). As a result, the Court believes that the State Tort Claims Act applies when defendants are sued in their individual capacities, as long as the defendants were

performing within the scope of employment. In this case, the defendants were clearly acting within the scope of employment at the time of the alleged negligence.

Because the Court has determined that the Act applies in this case, the Court must now decide whether Smith complied with the requirements of the Act. The Act provides that no suit can be brought in district court "unless the State Claims Board has made final disposition of the claim." Neb. Rev. Stat. § 81-8,213. There is no evidence in this case that Smith filed any claims with the State Claims Board prior to filing suit in this Court. Moreover, the Act provides, "The [state] district court, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any suit or tort claim. Suits shall be brought in the district court of the county in which the act or omission complained of occurred[.]" Neb. Rev. Stat. § 81-8,214. Thus, Smith has failed to comply with the requirements of the Act, and jurisdiction over Smith's negligence claims is not proper in this Court. As a result, the Court finds that summary judgment must be granted on Smith's second and third causes of action.

## CONCLUSION

Clarke and Colerick are entitled to summary judgment on Smith's Eighth Amendment claim because there is no evidence that either defendant was deliberately indifferent to Smith's medical

condition.  Clarke had no personal involvement in Smith's medical care, and cannot be held liable merely as a result of his general responsibility to oversee the operations of the prison. Moreover, there is no evidence that Colerick drew an inference between Smith's symptoms and the tumor prior to the May 2001 examination, after which he immediately referred Smith for further testing.  Finally, Clarke and Colerick are entitled to summary judgment on Smith's negligence claims because Smith failed to comply with the requirements of the State Tort Claims Act, and the state district courts have exclusive jurisdiction over claims under the Act.  Accordingly, the defendants' motion for summary judgment will be granted in its entirety.  A separate order will be entered in accordance with this memorandum opinion.

　　　　　DATED this 23rd day of May, 2005.

　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　/s/ Lyle E. Strom
　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　LYLE E. STROM, Senior Judge
　　　　　　　　　　　　　　　　United States District Court